

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

### NO. 2-07-295-CR

---

BILLY ALVIS CAMPBELL III                                    APPELLANT
A/K/A BILLY ALVIS CAMPBELL

V.

THE STATE OF TEXAS                                              STATE

-----------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

### I. Introduction

In four points, Appellant Billy Alvis Campbell III a/k/a Billy Alvis Campbell

appeals his convictions for aggravated sexual assault of a child[2] and indecency

with a child by sexual contact.[3]  We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

[2] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (Vernon Supp. 2008).

[3] *See id.* § 21.11(a)(1) (Vernon Supp. 2008).

## II. Factual and Procedural History

J.B., the mother of the complainant, B.B., was, until she moved to Brooklyn, New York, a longtime resident of Parker County. In the summer of 2001, J.B. moved back to Parker County to care for her father. J.B. enrolled B.B., who turned ten years old in October of 2001, in a Parker County elementary school. After J.B.'s father passed away, J.B. left Parker County, but she left B.B. in Parker County with her grandmother, J.B.'s mother. B.B. returned home to live with J.B. in the summer of 2002.

Soon after B.B. returned, J.B. noticed significant changes in her daughter's personality—B.B. would not talk to J.B., she was withdrawn, she lost interest in her pets, she seemed depressed, she began wearing dark colors, and she "constantly" had nightmares. B.B. failed classes at school, and she also began cutting herself. Several years later,[4] B.B. told J.B. that she had had sexual contact with Campbell, the uncle of one of her friends in Parker County.

Campbell was subsequently indicted, and a jury found him guilty of aggravated sexual assault of a child, sentenced him to prison for twenty years, and assessed a fine of $7,500.00 against him. The jury also found Campbell guilty of indecency with a child by sexual contact, sentenced him to prison for

---

[4] Campbell was tried in July of 2007. J.B. stated that B.B. told her what had happened about a year and a half earlier.

twelve years, and assessed an additional fine of $7,500.00 against him. This appeal followed.

### III. Sufficiency of the Evidence

In his first point, Campbell claims that the evidence presented at trial was factually insufficient to support his conviction for aggravated sexual assault of a child.

### A. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

3

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

**B. Analysis**

At trial, J.B. testified that B.B. told her that Campbell had kissed B.B., fondled her, had her perform oral sex on him, put his fingers inside of her, and performed oral sex on her. B.B. testified to the following:

(1) at a bonfire one night, Campbell gave her some beer and, in her friend's bathroom, he "French" kissed her and they "ma[d]e out";

(2) on another occasion, Campbell drove B.B. to a park in his truck and "French" kissed her;

(3) one day during the summer of 2002, while she was in her mother's house in Parker County, Campbell kissed her and had her put her hands in his pants and touch his penis;

(4) in a field behind her grandparents' house, Campbell had B.B. perform oral sex on him;

(5) on two other occasions, Campbell again had B.B. perform oral sex on him;

(6) on another occasion, Campbell kissed B.B. and penetrated her vagina with his fingers; and

(7) finally, on another occasion, Campbell pushed B.B. against a wall, kissed her, and pulled her legs around his hips and "gr[ou]nd himself up against" her.

The trial court admitted as evidence three written statements by Campbell. In the first statement, Campbell denied having engaged in any sexual activity with B.B. In the second statement, he admitted to "flirting" with and "kissing" B.B. In the third statement, he admitted that he "ma[d]e out" with

5

B.B., and he said that she "put her hand down [his] pants" and that he "put [his] hand down hers." He denied having pulled his pants down or having B.B. perform oral sex on him.

Connie Campbell, one of Campbell's sisters, testified for the defense. She stated the following:

(1) she had never seen B.B. in Campbell's truck, and she had never seen Campbell drive B.B. anywhere;

(2) on the night of the bonfire, none of the children at the bonfire, including B.B., had any alcohol, and she did not see Campbell give B.B. any beer; and

(3) on that same night, she never saw Campbell leave or go into a trailer with B.B.

In a very brief argument, Campbell bases his insufficiency claim almost exclusively on the credibility of B.B., the complainant. He argues that "[h]er Goth lifestyle and appearance, her delayed outcry, the lack of corroborating witnesses as well as her mental state leading to self-mutilation do not lend themselves to establishing the credibility of her testimony." He also contends that the testimony of B.B.'s mother, which "related a more detailed picture of [B.B.'s] circumstances and simply repeated what [B.B.] had told her," further undermines B.B.'s credibility. He also claims that the defense "witnesses who were present at the bonfire and on the property where [B.B.] claims these

events took place flatly refute[d]" B.B.'s allegations.[5]  Finally, he argues that the manner in which Campbell's confessions were obtained, i.e., the promise of a lower bond and the promise that his cooperation would help him with the District Attorney, "does not lend weight to the State's case against [Campbell] nor support the allegations of [B.B.] or the outcry made to her mother thereon.

The law is well settled.  The jury, which has the opportunity to observe the demeanor of the witnesses, is the exclusive judge of the credibility of witnesses and of the weight to be given testimony; it is also the exclusive province of the jury to reconcile conflicts in the evidence.  *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *Emenhiser v. State*, 196 S.W.3d 915, 929 (Tex. App.—Fort Worth 2006, pet. ref'd); *Klein v. State*, 191 S.W.3d 766, 778 (Tex. App.—Fort Worth 2006, pet. granted); *Allen v. State*, 180 S.W.3d 260, 264 (Tex. App.—Fort Worth 2005, no pet.).  That is, it was up to the jury to judge B.B.'s credibility and to determine whether to believe her; we may not substitute our judgment on this matter for the jury's.  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. 1999); *Emenhiser*, 196 S.W.3d at 929*; Allen*, 180 S.W.3d at 264.  B.B.'s testimony that Campbell had B.B. perform oral sex on him and that he penetrated her vagina with his fingers support a conviction

---

[5] Of the two witnesses called by the defense, only Connie Campbell testified as to the events at the bonfire.

7

for aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (ii), (v). Thus, viewing the evidence in a neutral light, and giving due deference to the jury's determinations of B.B.'s demeanor and credibility, we hold that the evidence is factually sufficient to support the jury's verdict on the count of aggravated sexual assault. We overrule Campbell's first point.

## IV. Unanimous Jury Verdict

In his second point, Campbell argues that he was denied a unanimous jury verdict.

### A. Standard of Review

Our constitution requires a unanimous jury verdict in all felony cases. TEX. CONST. art. V, § 13; *Stuhler v. State*, 218 S.W.3d 706, 716 (Tex. Crim. App. 2007). A unanimous jury verdict requires more than mere agreement on a violation of a statute—it ensures that the jury agrees on the factual elements underlying an offense. *Francis v. State,* 36 S.W.3d 121, 125 (Tex. Crim. App. 2000); *Clement v. State*, 248 S.W.3d 791, 800 (Tex. App.—Fort Worth 2008, no pet.). Because of the possibility of a nonunanimous jury verdict, "separate offenses" may not be submitted to the jury in the disjunctive. *Francis,* 36 S.W.3d at 124–25; *Clement*, 248 S.W.3d at 800. The unanimity requirement is not violated, however, when the jury is instructed on alternative theories, or

8

manner and means, of committing the same offense. *De Los Santos v. State*, 219 S.W.3d 71, 76 (Tex. App.—San Antonio 2006, no pet.); *Cook v. State*, 192 S.W.3d 115, 118 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004) (noting that "[w]hen an indictment alleges differing methods of committing capital murder in the conjunctive, the jury may properly be charged in the disjunctive"). When a defendant is charged with multiple offenses, the jury charge may submit the offenses in the disjunctive, but the trial court must instruct the jurors that they must be unanimous in deciding which offense the defendant committed, and the record must show that the verdict is unanimous. *Rangel v. State*, 199 S.W.3d 523, 540 (Tex. App.—Fort Worth 2006), *pets. dism'd*, 250 S.W.3d 96 (Tex. Crim. App. 2008).

Each separately described conduct in the aggravated-assault statute is a separate statutory offense. *Vick v. State*, 991 S.W.2d 830, 832–33 (Tex. Crim. App. 1999). Similarly, each separately described conduct in the indecency with a child statute is a separate statutory offense. *Rangel*, 199 S.W.3d at 539–40.

**B. Analysis**

Campbell claims that because the jury was informed that it could convict him under alternative theories of each count, "it is unclear whether the jury unanimously found beyond a reasonable doubt either of the two theories or simply part of the jury found one theory and the remainder found the other to be true beyond a reasonable doubt in determining guilt."

An analysis of the jury charge does not bear out Campbell's contention. For the count of aggravated sexual assault, the application paragraph of the jury charge is as follows:

> Now, *if you unanimously find* from the evidence beyond a reasonable doubt that in Parker County, Texas, on or about the 1st day of January, 2002, the defendant, Bill Alvis Campbell, III, did then and there *intentionally or knowingly cause the penetration of the female sexual organ of [B.B.]*, a child who was then and there younger than 14 years of age and not the spouse of said defendant, with the finger of said defendant, *then you will find the defendant guilty of aggravated sexual assault of a child* as charged in the indictment. *Alternatively, if you unanimously find* from the evidence beyond a reasonable doubt that in Parker County, Texas, on or about the 1st day of January, 2002, the defendant, Bill Alvis Campbell, III, did then and there *intentionally or knowingly cause the mouth of said [B.B.]*, a child who was then and there younger than 14 years of age and not the spouse of said defendant, *to contact the penis of said defendant*, *then you will find the defendant guilty of aggravated sexual assault of a child* as charged in the indictment. [Emphasis added.]

10

That is, the charge authorized the jurors to convict Campbell of aggravated

sexual assault if they *unanimously* found that he had "intentionally or knowingly

cause[d] the penetration of [B.B.'s] female sexual organ."  Alternatively, the

charge authorized the jurors to convict Campbell of aggravated sexual assault

if they *unanimously* found that he had "intentionally or knowingly cause[d] the

mouth of . . . [B.B.] . . . to contact [Campbell's] penis."  Thus, regardless of

whether Campbell was convicted on either the first or the second theory, the

charge required that the jurors be unanimous on at least one of those theories.

The same analysis applies to the count of indecency with a child.  For

that count, the application paragraph of the jury charge is as follows:

> Now, *if you unanimously find* from the evidence beyond a reasonable doubt that in Parker County, Texas, on or about the 1st day of January, 2002, the defendant, Bill Alvis Campbell, III, did then and there *intentionally or knowingly, with the intent to arouse or gratify the sexual desire of said defendant, engage in sexual contact by touching any part of the genitals of [B.B.]*, a child younger than seventeen (17) years and not the spouse of the defendant, *then you will find the defendant guilty of indecency with a child* as charged in the indictment.  *Alternatively, if you unanimously find* from the evidence beyond a reasonable doubt that in Parker County, Texas, on or about the 1st day of January, 2002, the defendant, Bill Alvis Campbell, III, did then and there *intentionally or knowingly, with the intent to arouse or gratify the sexual desire of said defendant, engage in sexual contact by causing the said [B.B.]*, a child younger than seventeen (17) years and not the spouse of the defendant, *to contact any part of the genitals of the defendant, then you will find the defendant guilty of*

11

*indecency with a child* as charged in the indictment. [Emphasis added.]

That is, the charge authorized the jurors to convict Campbell of indecency with a child if they unanimously found that he had "intentionally or knowingly, with the intent to arouse or gratify [his] sexual desire, engage[d] in sexual contact by touching any part of [B.B.'s] genitals." Alternatively, the charge authorized the jurors to convict Campbell of indecency with a child if they unanimously found that he had "intentionally or knowingly, with the intent to arouse or gratify [his] sexual desire, engage[d] in sexual contact by causing . . . [B.B.] . . . to contact any part of [Campbell's] genitals." Thus, regardless of whether Campbell was convicted on either the first or the second theory, the charge required that the jurors be unanimous on at least one of those theories.

Because the jury was instructed, for each count, on alternative theories of committing the same offense, because the charge required unanimity on at least one theory of each count,[6] and because the record shows that the verdict

---

[6] The unanimity requirement in the jury charge in this case is similar to the type of jury charge recently approved by the Texas Court of Criminal Appeals. *See Ngo v. State*, 175 S.W.3d 738, 744–45 (Tex. Crim. App. 2005). In that decision, which concerned credit card abuse, the Court held that the following jury charge was erroneous because it did not require unanimity on at least one of three disjunctively submitted offenses:

Now, if you find from the evidence beyond a reasonable doubt that

12

[appellant] on or about the 13th day of December, 2002, did then and there unlawfully, intentionally or knowingly steal a credit card owned by the card holder, Hong Truong, with intent to deprive the cardholder of the property and without the effective consent of the cardholder;  or

If you find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully and knowingly receive with intent to use a credit card owned by card holder, Hong Truong, knowing the credit card had been stolen;  or

If you find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, with intent to obtain a benefit fraudulently, did use or present to [H]anh Nguyen a credit card knowing the use was without the effective consent of the cardholder, Hong Truong, namely without consent of any kind, and knowing that the credit card had not been issued to the defendant, *then you will find [appellant] guilty as charged in the indictment*.

*Id.* at 742 n.5, 744–49.  The court noted that a correct version of the charge would have been the following:

Now, if you *unanimously* find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully, intentionally or knowingly steal a credit card owned by the card holder, Hong Truong, with intent to deprive the cardholder of the property and without the effective consent of the cardholder;  or

If you *unanimously* find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully and knowingly receive with intent to use a credit card owned by card holder, Hong Truong, knowing the credit card had been stolen;  or

13

for each count was unanimous, we conclude that Campbell was not denied a unanimous jury verdict. *See De Los Santos*, 219 S.W.3d at 76; *Rangel*, 199 S.W.3d at 540; *Cook*, 192 S.W.3d at 118. We overrule Campbell's second point.

## V. Double Jeopardy

In his third point, Campbell argues that his Fifth Amendment protection against double jeopardy was violated because he was punished twice for the same act.

### A. Standard of Review

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. CONST. amend. V. Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second

---

If you *unanimously* find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, with intent to obtain a benefit fraudulently, did use or present to [H]anh Nguyen a credit card knowing the use was without the effective consent of the cardholder, Hong Truong, namely without consent of any kind, and knowing that the credit card had not been issued to the defendant, then you will find [appellant] guilty as charged in the indictment.

*Id.* at 749 n.44.

14

prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh'g).

A defendant has the burden to "preserve, in some fashion," a double jeopardy objection at or before the time that the charge is submitted to the jury. *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000). Because of the fundamental nature of double jeopardy, however, a double jeopardy claim may be raised for the first time on appeal when "the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Id.* at 643. When separate theories for an offense are issued to the jury disjunctively, a double jeopardy violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double jeopardy violation and there is sufficient evidence to support that valid theory. *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006). The fact that the jury's verdict *could* have relied on a theory that would violate the Double Jeopardy Clause is not sufficient to show a constitutional violation "clearly apparent on the face of the record." *Id.*

**B. Analysis**

Campbell asserts that he was punished for the same act twice under counts I and II of the indictment.

Paragraph A of the count I indictment against Campbell (aggravated sexual assault) alleges that he penetrated B.B.'s sexual organ with a finger. Paragraph A of the count II indictment against Campbell (indecency with a child) alleges that he engaged in sexual contact with B.B. by touching her genitals. The jury charge tracked the indictment as to these two theories. Thus, Campbell argues that because the penetration of B.B.'s sexual organ by his finger involves a touching of B.B.'s sexual organ, the State effectively "charged the same act and its constituent components twice in these counts."

Paragraph B of the count I indictment against Campbell (aggravated sexual assault) alleges that he caused B.B.'s mouth to contact his penis. Paragraph B of the count II indictment against Campbell (indecency with a child) alleges that he engaged in sexual contact with B.B. by causing her to contact any part of his genitals. Again, the jury charge tracked the indictment as to these two theories. Thus, Campbell argues that "[c]learly one cannot commit the offense set forth in paragraph B of Count I without also committing the offense set forth in paragraph B of Count II of the indictment as they are but the same act."

16

The record shows that Campbell never made a double jeopardy objection at trial. Therefore, we must evaluate whether the face of the trial record clearly shows whether a double jeopardy violation exists. *See Langs*, 183 S.W.3d at 687 (citing *Gonzales v. State,* 973 S.W.2d 427, 431 (Tex. App.—Austin 1998, pet. granted), *aff'd*, 8 S.W.3d 640 (Tex. Crim. App. 2000)), (stating that a double jeopardy claim may be raised for the first time on appeal if (1) "the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record"; and (2) "when enforcement of the usual rules of procedural default serves no legitimate state interest.")

The trial record shows that B.B. testified as to multiple instances of sexual contact with Campbell: (1) Campbell had B.B. put her hands in his pants and touch his penis; (2) on three separate occasions, Campbell had B.B. perform oral sex on him; (3) Campbell penetrated B.B.'s vagina with his fingers; (4) Campbell pushed B.B. against a wall, pulled her legs around his hips and "gr[ou]nd himself up against" her," which, the State argues, was a touching of B.B.'s body with his genitals.[7]

---

[7] The indictments alleged that the incidents took place "on or about the 1st day of January, 2002," and the jury charge tracked this language. It is well settled that the "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is prior to the presentation of the indictment and not so remote that prosecution is barred by the statute of limitations. *Sledge v. State,* 953 S.W.2d 253, 256

17

Thus, there is sufficient evidence to support each conviction without a violation of the Double Jeopardy Clause. For instance, the jury could have convicted Campbell of aggravated sexual assault based on one of the three occasions on which B.B. alleged that Campbell had her perform oral sex on him (i.e., causing her mouth to contact his penis), and it could have convicted Campbell of indecency with a child based on B.B.'s allegation that Campbell penetrated her vagina with his fingers (i.e., touching her genitals). Clearly, those are two separate acts; thus, if the jury convicted under those two theories, then there is no double jeopardy violation. Similarly, the jury could have convicted Campbell of aggravated sexual assault based on B.B.'s allegation that Campbell penetrated her vagina with his fingers, and it could have convicted Campbell of indecency with a child based on one of the three occasions on which B.B. alleged that Campbell had her perform oral sex on him (i.e., causing her to contact his genitals). Again, if the jury convicted under those two theories, then there is no double jeopardy violation. Thus, a double jeopardy violation is not clearly apparent from the record. *See Langs,* 183 S.W.3d at 687.

---

(Tex. Crim. App. 1997).

Therefore, because Campbell failed to properly preserve error on his double jeopardy claim by raising such an objection at or before the time the charge was submitted to the jury, and because the alleged double jeopardy violation is not clearly apparent from the record, we overrule Campbell's third point. *See, e.g.*, *id.* at 686–89.

## VI.  Admission of Evidence

In his fourth point, Campbell argues that the trial court violated article 38.22, section 3(a)(5) of the code of criminal procedure in admitting as evidence videotaped statements that he made to the police.[8]

### A. Standard of Review and Applicable Law

The code of criminal procedure states in relevant part that

> [n]o oral or sign language statement of an accused made as a result
> of custodial interrogation shall be admissible against the accused

---

[8] Campbell's point states that the trial court erred in overruling his objections "to the admission of SX-6-8."  The argument section of this point concerns the admission of the videotaped statements that Campbell made to the police.  But the videotape was admitted into evidence as State's Exhibit No. 9; Campbell's written statements to the police were admitted into evidence as State's Exhibits Nos. 6, 7, and 8.  We base our analysis on the substance of Campbell's argument, i.e., the admission of the videotaped statements.

19

in a criminal proceeding unless . . . not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(5) (Vernon Supp. 2008).

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard, and we will uphold the court's decision as long as it lies within the zone of reasonable disagreement. *Burden v. State,* 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App.1990) (op. on reh'g); *West v. State,* 121 S.W.3d 95, 100 (Tex. App.—Fort Worth 2003, pet. ref'd).

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

An objection preserves only the specific ground cited. TEX. R. APP. P. 33.1(a)(1)(A); *Mosley*, 983 S.W.2d at 265; *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996); *see also Fierro v. State*, 706 S.W.2d 310, 317–18 (Tex. Crim. App. 1986) (holding that general objection is insufficient to apprise trial court of complaint urged and thus preserves nothing for review). A general or imprecise objection is sufficient to preserve error only if the legal basis for the objection is obvious to the trial court and opposing counsel. *Buchanan v. State,* 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). Whether the specific grounds for the objection were apparent from the context of the objection is determined by looking at each situation individually as it arises. *Heidelberg v. State*, 144 S.W.3d 535, 538 (Tex. Crim. App. 2004).

**B. Analysis**

Campbell complains that prior to trial, his trial counsel had been informed that there were no recordings of statements made by Campbell. But three days before trial, the State informed the defense that it had electronically recorded statements made by Campbell.[9] Thus, Campbell argues, the admission of his recorded statements violated the twenty-day disclosure requirement of article

---

[9] During the videotaped interview, the investigating police officer who interviewed Campbell told him that the interview was being recorded.

38.22. He concludes that "the trial court clearly erred in its interpretation of the effect of Section 3, subdivision 5, of Tex. Code Crim. Proc. 38.22."

Though Campbell asserts that this issue was preserved for review, the record suggests otherwise. Campbell's attorney objected to the admission of State's Exhibit No. 9 on the following grounds: (1) Campbell's rights to assistance of counsel and due process, via the Sixth and Fourteenth Amendments of the United States Constitutions were violated; and (2) several portions of the recorded statements were extraneous and irrelevant. He then stated the following:

> I need to get into the record the fact of surprise because I was only provided with this videotape on Friday afternoon. That is July – excuse me, Friday morning. That is July 27th of 2007, this past Friday morning I was first acquainted with this tape. I had been previously informed by the government that no such tape existed . . . If I had been provided that tape before the pretrial could have been had, I would have made my objections at that time. I just want to make sure that I – the fact if we have to go somewhere else on this, that they don't say, hey, you should have done it then. Well, I had no knowledge. I was told that no such evidence existed.

It is not clear that Campbell's attorney actually objected to the admission of the evidence because of its late disclosure to him; from the statements above, it appears that he used the late disclosure to explain why he had not made the other objections earlier. Moreover, he did not specifically base any objection to the admission of the recorded statements on either art. 38.22 or

22

its twenty-day requirement. Therefore, he did not preserve this issue for review. *See* TEX. R. APP. P. 33.1(a)(1)*; Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000) (stating that "[t]o preserve error regarding the admission of evidence, a defendant must lodge a timely and specific objection [in order to] give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection"); *Cisneros v. State*, 692 S.W.2d 78, 83 (Tex. Crim. App. 1985) (stating that "when an objection is made, it must not only identify what is objected to but must set forth grounds for the objections"); *cf. Banargent v. State*, 228 S.W.3d 393, 401 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that appellant did not preserve article 38.22 error because "[a]lthough [he] presented the trial court with an objection under article 38.23, the record is devoid of any indication that he objected under article 38.22").

### C. Harm Analysis

Even assuming that Campbell preserved this issue for review and that admission of the evidence was error, we conclude that any error was harmless. Because any error here was statutory, we apply rule 44.2(b) and disregard any error "that does not affect substantial rights." Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect

23

or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall,* 961 S.W.2d at 643. In making this determination, we review the record as a whole. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

During trial, the State played Campbell's videotaped statements for the jury during the testimony of the investigating officer who interviewed Campbell. Afterward, the officer testified that the police sometimes minimize both the seriousness of the crime and victim's age (as the officer did in the videotaped interview) in order to get the interviewee to keep speaking with the police. He also explained that he had not interviewed anyone else after the videotaped interview with Campbell because Campbell had told him that he had been alone with B.B. during their encounters. He also stated that after the interview, he believed that Campbell had admitted to the indecency offense.

During closing arguments, the State argued that during the videotaped interview, Campbell had "admitted to engaging in sexual contact," and twice pointed out that Campbell said that he put his hands on her vagina. The State also noted that Campbell had said that B.B. had touched his penis. The State again pointed out these admissions toward the end of closing arguments.

24

After reviewing the record, we determine that Campbell's admissions in the videotaped statements were merely duplicative of the admissions contained in his written statements, which were admitted without objection. Campbell's written statements included his admissions that he "ma[d]e out" with B.B., that she "put her hand down [his] pants," and that he "put [his] hand down hers." He denied having pulled his pants down or having B.B. perform oral sex on him. Because the alleged improperly admitted videotaped evidence merely repeated Campbell's properly admitted written statements, any error was harmless. *See Daniel v. State,* 668 S.W.2d 390, 392 (Tex. Crim. App. 1984) (holding that improperly admitted evidence was not reversible error because the same facts were proved by other properly admitted evidence); *Pina v. State*, 38 S.W.3d 730, 736 (Tex. App.—Texarkana 2001, pet. ref'd) (holding that the trial court's admission of statements that were not in compliance with article 38.23 was harmless error where other substantial parts of the defendant's statement had already been admitted without objection).

We conclude that Campbell's substantial rights were not affected because the videotaped statements were merely duplicative as the admissions Campbell

25

made in them were proved by other properly admitted evidence. Therefore, any error was harmless. Accordingly, we overrule Campbell's fourth point.[10]

## VII.  Conclusion

Having overruled all of Campbell's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, DAUPHINOT, and HOLMAN, JJ.

---

[10] Moreover, the court of criminal appeals has stated that the purpose of the twenty-day requirement of article 38.22, section 3(a)(5), is to allow the defense to prepare possible challenges to the admissibility or credibility of the recorded statements. *Tigner v. State*, 928 S.W.2d 540, 546 (Tex. Crim. App. 1996).  In this case, the State provided Campbell's attorney with the recorded statements on Friday, July 27, 2007.  Voir dire examination took place on Monday, July 30, 2007, and the trial began on Tuesday, July 31, 2007. Following Campbell's attorney's objection to admission of the recording, the prosecutor stated that Campbell's attorney had told him that he had "reviewed the tape at least three times in its entirety [the previous] weekend and then once again."  Campbell's attorney did not deny this, nor did he ask for a continuance.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: August 7, 2008